Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| | | |
|---|---|---|
| RAFAEL COLÓN AYMAT<br>Recurrido<br><br>v.<br><br>MIRAFLORES 19 RESTAURANT; ASEGURADORA ABC; CORPORACIÓN ABC; JOHN DOE; MARY DOE<br>Peticionarios | TA2025CE00364 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2025CV00828<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Adames Soto, Juez Ponente

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

Comparece Miraflores 19 Restaurant (Peticionario o Miraflores), solicitando que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 8 de julio de 2025.[1] Mediante dicho dictamen, el foro primario declaró No Ha Lugar la *Moción en Solicitud de Sentencia Sumaria* […] que presentó el Peticionario, por lo que ordenó la continuación de los procedimientos. Al así decidir, el TPI determinó que existen hechos materiales en controversia que ameritan sean dilucidado en juicio plenario.

Sin embargo, el Peticionario asevera ante nosotros que no persisten hechos materiales en controversia, ni tampoco prueba acerca de algún acto u omisión culposo o negligente que lo vincule con la caída del señor Rafael Colón Aymat, (Recurrido o señor Colón Aymat), frente a su negocio.

Adelantamos que hemos decidido *denegar* expedir el auto solicitado.

---

[1] Véase, Entrada 61 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

## I. Resumen del tracto procesal

El 14 de febrero de 2024, el señor Rafael Colón Aymat (Recurrido o señor Colón Aymat) presentó una *Demanda* por daños y perjuicios contra el Peticionario y otras partes.[2] Expuso que la noche del 9 de diciembre de 2023, al salir del restaurante Miraflores, donde se encontraba cenando junto a su esposa y unos amigos, sufrió una caída que le causó una fractura. Relató que al salir del restaurante y caminar por la rampa, resbaló y cayó en el piso. **Adujo que la rampa estaba cubierta de limo** y no tenía suficiente iluminación. Además, enfatizó que esa noche llovió fuertemente. Posteriormente, acudió al hospital, en donde le diagnosticaron que tenía una fractura en el hombro izquierdo. A tenor, sostuvo que la parte peticionaria debía responder por los daños causados por tal omisión, al restaurante permitir una condición peligrosa en sus facilidades.

En respuesta, el Peticionario instó contestación a demanda, en la que negó la mayoría de las alegaciones en su contra y levantó como defensas afirmativas, entre otras, que el incidente se debió a la culpa o negligencia del señor Colón Aymat, por su descuido y falta de precaución al caminar, ya que la condición de peligrosidad que alega era visible a simple vista.[3]

Tras varias incidencias procesales, y concluido el descubrimiento de prueba, Miraflores presentó una *Moción en Solicitud de Sentencia Sumaria al Amparo de la Regla 36.3 de Procedimiento Civil*.[4] En resumen, expuso que la parte recurrida no tiene prueba alguna que demuestre que haya incurrido en un acto culposo o negligente que provocara el alegado incidente. Sostuvo que durante el descubrimiento de prueba se pudo establecer que la zona de entrada y salida del restaurante estaba mojada, por causa de la lluvia que cayó ese día, de lo cual la parte recurrida tenía conocimiento, por lo que no se le puede atribuir responsabilidad al restaurante por la caída. Aseguró que la lluvia no constituye una condición

---

[2] *Id.*, Entrada 1.
[3] *Id.*, Entrada 8.
[4] *Id.*, Entrada 47.

de peligrosidad por la que se pueda imputar negligencia. Sobre lo mismo, concluyó que sugerir lo contrario, equivaldría a aplicar la teoría de *res ipsa loquitor*, eliminada de nuestro ordenamiento civil. Para sostener su argumento legal, el Peticionario presentó una lista de veinticinco hechos, que propuso como incontrovertidos, cuya prueba documental se basó esencialmente en la deposición que le tomara al señor Colón Aymat.

Por su parte, mediante *Oposición a "Moción en Solicitud de Sentencia Sumaria al Amparo de la Regla 36.3 de Procedimiento Civil"*, el Recurrido expuso que no existía controversia sobre su caída en el restaurante Miraflores. Luego de admitir y negar los hechos propuestos como incontrovertidos por Miraflores en la petición de sentencia sumaria, argumentó que existían hechos materiales en controversia que ameritan su resolución en un juicio en su fondo, específicamente al haber alegado que existía limo frente a la entrada del local donde ocurrió la caída.[5] Sostuvo que Miraflores debió tomar las medidas de seguridad mínimas para advertir a sus clientes sobre tal condición peligrosa (limo) en el establecimiento.

Evaluadas la solicitud de sentencia sumaria y su oposición, el TPI emitió la *Resolución* cuya revocación nos solicita Miraflores,[6] en la que determinó como hechos incontrovertidos los siguientes:

1) El 9 de diciembre de 2023, el señor Colón visitó el Restaurante Miraflores en Guaynabo, Puerto Rico, con su compañera sentimental y otra pareja para cenar, entre 7:00 a 8:00 p.m.
2) Cuando la parte demandante llegó al restaurante era de noche.
3) La noche de los hechos estaba lloviendo.
4) Al llegar el demandante al restaurante, estaba lloviendo.
5) Durante el trayecto al restaurante, también estaba lloviendo.
6) Al llegar al restaurante, antes de ordenar, el demandante salió a llamar por teléfono a su madre.
7) El demandante salió solo.
8) Ninguno de los acompañantes del demandante observó su caída.
9) Cuando el demandante salió a hacer la llamada, continuaba lloviznando.
10) Cuando el señor Colón abrió la puerta, observó que seguía lloviznando al igual que desde que llegaron.
11) El señor Colón se cayó porque resbaló al salir del restaurante.
12) La rampa del establecimiento estaba mojada con agua de lluvia.
13) El demandante había pasado por el mismo lugar poco antes para entrar al restaurante.
14) Cuando el demandante entró al restaurante por la misma

---

[5] *Id.*, Entrada 54.
[6] *Id.*, Entrada 61.

rampa, también estaba mojada.

15) Entre la entrada al restaurante y la salida del demandante cuando se cayó, transcurrió poco tiempo.
16) El señor Colón sabía que cuando entró la rampa estaba mojada, pero no pensó en eso al salir.
17) El demandante no puede establecer que el lugar carezca de iluminación.
18) Luego de su caída, el señor Colón entró al restaurante, y estuvo allí con sus acompañantes como una (1) hora.
19) El señor Colón ingirió alcohol en la mesa luego de su caída.
20) El señor Colón fue en una (1) sola ocasión al ortopeda.
21) De la nota de progreso del ortopeda surge que el demandante le reportó que caminaba fuera del restaurante utilizando su teléfono y se cayó en un piso mojado.
22) El señor Colón fue quien dio la información de los hechos al ortopeda.

Igualmente enumeró los hechos que estaban en controversia:

1) ¿Cómo eran las condiciones que tenía la rampa localizada en la entrada del establecimiento al momento del accidente?
2) Si existía o no limo en dicha rampa.
3) De haber existido el limo, si era perceptible a simple vista.
4) Si antes del incidente, la parte demandada le daba mantenimiento al área donde ocurrió el accidente.
5) Si la existencia de limo en la rampa era conocida por la parte demandada, así como por los empleados del establecimiento.
6) Si el lugar del accidente era la única entrada al establecimiento.
7) Si la parte demandada tomó las medidas de seguridad adecuadas para evitar sucesos como el accidente sufrido por el demandante.
8) Si el limo que presuntamente estaba en la rampa de la entrada del establecimiento constituye una condición peligrosa.
9) Si la existencia de limo en la rampa fue la causante del accidente sufrido por el demandante en el establecimiento.
10) Si la parte demandada supervisaba a sus empleados en el proceso de tomar las medidas de seguridad y de mantenimiento requeridas en la rampa de la entrada del establecimiento.
11) Si el demandante tomó las debidas precauciones e iba pendiente a su entorno mientras caminó por la rampa de la entrada del establecimiento.
12) La negligencia y responsabilidad de las partes, si alguna.
13) De haber ocurrido daños, está en controversia su valoración.

En armonía, habiendo determinado la persistencia de hechos medulares en controversia, el TPI decidió denegar la *Moción en Solicitud de Sentencia Sumaria al Amparo de la Regla 36.3 de Procedimiento Civil* que presentó Miraflores. Expuso que en el pleito existían elementos subjetivos de credibilidad y aspectos de negligencia que deben dilucidarse en un juicio en su fondo, y tampoco procedía la solicitud de sentencia sumaria en su modalidad de insuficiencia de prueba, debido a que Miraflores no demostró la existencia de los elementos que se requieren para prevalecer.

Inconforme, Miraflores sometió una *Moción en Solicitud de Reconsideración*[7]*,* que el TPI denegó.[8]

En desacuerdo, el Peticionario acude ante nosotros mediante el recurso de epígrafe, señalando los siguientes errores:

PRIMER ERROR SEÑALADO: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAMÓN, AL NEGARSE A PROVEER LA DESESTIMACIÓN SUMARIA SOLICITADA, CUANDO LAS ADMISIONES DE LA PARTE DEMANDANTE EVIDENCIAN QUE LA PRUEBA ES INSUFICIENTE PARA SUSTENTAR SUS ALEGACIONES, Y QUE SE CAE AL RESBALAR EN PISO MOJADO POR LLUVIA.

SEGUNDO ERROR SEÑALADO: ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE BAYAMÓN, AL ACEPTAR UNA DECLARACIÓN JURADA HECHA POR EL DEMANDANTE POSTERIOR A RECIBIR LA SOLICITUD DE SENTENCIA SUMARIA, PARA REFUTAR SUS DECLARACIONES PREVIAS, Y SUS ADMISIONES BAJO JURAMENTO, CON EL PROPÓSITO DE EVADIR EL REMEDIO SUMARIO SOLICITADO, Y AL DECRETAR QUE TAL DECLARACIÓN, CONTRARIO A LO QUE ESTABLECE EL DERECHO APLICABLE, NO CONSTITUYE UN "SHAM AFFIDAVIT".

## II. Exposición de Derecho

a.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019); *Medina Nazario v. McNeil Healthcare LLC.,* 194 DPR 723 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró,* 165 DPR 324 (2005). La expedición del auto descansa en la sana discreción del tribunal y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* pág. 711. El concepto discreción implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Claro, la discreción judicial no es irrestricta y ha sido definida como una forma de razonabilidad aplicada al

---

[7] *Id.*, Entrada 63.
[8] *Id.*, Entrada 64.

discernimiento judicial para llegar a una conclusión justiciera. *Municipio Autónomo de Caguas v. JRO Construction,* supra*,* págs. 711-712; *Negrón v. Srio. de Justicia,* 154 DPR 79 (2001).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52, establece que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando, en lo pertinente, se recurra de la denegatoria de una moción de carácter dispositivo.

En virtud de lo anterior, para poder ejercitar debidamente nuestra facultad revisora sobre un caso, primeramente, debemos determinar si el asunto del cual se recurre se encuentra dentro de alguna de las materias contempladas en la Regla 52.1, *supra.* De ser así, entonces procede evaluar si a la luz de los criterios enumerados en la Regla 40[9] de nuestro Reglamento, se justifica nuestra intervención. Con todo, se ha de considerar que ninguno de los criterios contenidos en la Regla 40 citada, es determinante por sí solo para el ejercicio de nuestra jurisdicción. *García v. Padró, supra.*

En este ejercicio, nuestro máximo foro ha expresado que un tribunal apelativo no intervendrá con las determinaciones interlocutorias discrecionales procesales de un tribunal sentenciador en ausencia de pasión, perjuicio, parcialidad o error manifiesto. *Argüello v. Argüello,* 155

---

[9]  A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
   B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
   C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
   D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberá ser elevados, o de alegatos más elaborados.
   E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
   F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
   G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.
Regla 40, Reglamento del Tribunal de Apelaciones, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, 215 DPR ___ (2025).

DPR 62, 78-79 (2001). Cónsono con esto, el mismo alto foro ha advertido que nuestro ordenamiento jurídico desfavorece la revisión de las determinaciones interlocutorias. *Medina Nazario v. Mcneil Healthcare LLC*, supra, pág. 730. Además, en su mayor parte, las determinaciones interlocutorias pueden esperar hasta la conclusión del caso para ser revisadas en apelación, conjuntamente con la sentencia dictada en el pleito. *IG Builders et al. v. BBVAPR,* supra, pág. 336.

Finalmente, conviene advertir que la denegatoria de un tribunal apelativo a expedir un recurso de *certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en los méritos. *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016). Por esto, es obligatorio concluir que la denegatoria a expedir un recurso de *certiorari* tampoco constituye la ley del caso. *Id.*

b.

La sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". *Ramos Pérez v. Univisión*, 178 DPR 200, 220 (2010). Por lo tanto, el principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013).

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias, o resolución que deniega su aplicación, este foro intermedio se encuentra en la misma posición que el foro primario para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 115 (2015). Los criterios que debemos seguir al atender la revisión de una sentencia sumaria dictada por el foro de instancia han sido enumerados con exactitud por nuestro

Tribunal Supremo. *Id.*, págs. 118-119; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679 (2018). A tenor, el Tribunal de Apelaciones debe:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, supra;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, *supra*, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Id.*, pág. 679.

Sin embargo, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, *supra*, pág. 118. El primer punto se enfoca en el principio de que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. *Id.*, pág. 115. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlas. *Id.*

Asimismo, la Regla 36.3 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, especifica los requisitos de forma que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En suma, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. *Id.* Ahora bien, "es esencial que de la

prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso". *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 993 (2024); *Zambrana García v. ELA*, 204 DPR 328, 341-342 (2020); *Jusino et al. v. Walgreens*, 155 DPR 560, 577 (2001).

En contraste, la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente. Regla 36.3 (b) de las de Procedimiento Civil, *supra*. De aquí que la parte que se opone a que se dicte sentencia sumaria no puede descansar exclusivamente en sus alegaciones, ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383 (2009). Por el contrario, debe controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 138 (2006). Ello se puede lograr a través de contradeclaraciones juradas y contradocumentos que pongan en entredicho los hechos presentados por el promovente. *Ramos Pérez v. Univisión P.R., Inc.*, *supra*, pág. 215, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986).

En cuanto a las declaraciones juradas, la Regla 36.5 de Procedimiento Civil (32 LPRA Ap. V) establece que: "[l]as declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal del (de la) declarante. Contendrán aquellos hechos que serían admisibles en evidencia y demostrarán afirmativamente que el(la) declarante está cualificado(a) para testificar en cuanto a su contenido". *Id.*; *Roldán Flores v. M. Cuebas et al.,* supra, pág. 677.

Por último, no procede dictar sentencia sumaria cuando existen elementos subjetivos de intención, propósitos mentales o negligencia;

cuando la credibilidad de las partes sea esencial; o cuando el caso trata controversias complejas o involucra asuntos de interés público. *Jusino et als. v. Walgreens,* supra, pág. 579*; González Aristud v. Hosp. Pavía*, supra.

**III.  Aplicación del Derecho a los hechos**

a.

Según citamos de la Regla 52.1 de Procedimiento Civil, *supra*, la denegatoria de una moción dispositiva al amparo de la Regla 36 de Procedimiento Civil, *supra*, nos habilita para intervenir con el dictamen interlocutorio. Estando ante la denegatoria de una moción de sentencia sumaria, *ergo*, moción dispositiva, estamos en posición de ejercitar de nuestra discreción al disponer sobre si expedir o no el recurso de *certiorari* solicitado.

b.

Por cuanto la revisión de una denegatoria de moción de sentencia sumaria por este foro intermedio acontece *de novo*, como cuestión de umbral, advertimos que la moción dispositiva instada por Miraflores cumplió sustancialmente con los requisitos de la Regla 36.3 (a) de Procedimiento Civil, *supra*. En este sentido, dicha petición contiene una exposición breve de las alegaciones, los asuntos en controversia y una relación concisa y organizada, en párrafos enumerados, de todos los hechos esenciales sobre los cuales no existe controversia, y la prueba admisible que apoya su alegación. Además, expone los argumentos en derecho por los que se debe dictar sentencia sumaria y el remedio solicitado. Por su parte, la *Oposición* a sentencia sumaria que presentó el Recurrido también cumple con la mayoría de los requisitos que exige nuestra Regla 36.3 (b) de Procedimiento Civil, por lo que solo nos resta determinar si el TPI incidió al denegar la solicitud de sentencia sumaria presentada por Miraflores.

Dispuesto lo anterior, para el Peticionario el tribunal recurrido incidió al denegar su solicitud de sentencia sumaria, pues entiende que,

concluido el descubrimiento de prueba, no existe evidencia que demuestre que incurrió en una acción u omisión negligente que haya causado la caída que le imputa el señor Colón Aymat en su demanda. Añade en su recurso de *certiorari* en particular, que, al este último ser depuesto quedó *extremadamente claro* que no tiene manera de probar que en el área donde ocurrió la caída hubiese el supuesto limo alegado.

Sobre la última oración que precede lo primero que nos llama la atención es que en la moción de sentencia sumaria presentada por Miraflores no se mencionara, menos aun discutiera, en forma alguna la alegación incluida en la Demanda acerca de la presencia de limo en el lugar donde presuntamente ocurrió la caída del señor Colón Aymat. Más aún, en ninguno los veinticinco hechos que allí propuso dicha parte como materiales e incontrovertidos se abordó tal alegación sobre el limo, menos aún surge de la lectura de los segmentos de la deposición tomada al señor Colón Aymat que se hubiese confrontado con tal tema. Esto, a pesar de que en las alegaciones quinta y sexta de la Demanda expresamente se alegó que la rampa donde presuntamente ocurrió la caída estaba "completamente llena de limo" y "repleta de limo", respectivamente[10]. De aquí que, contrario a lo que se aduce en el recurso de *certiorari*, no nos provoque sorpresa la declaración jurada incluida por la parte recurrida en su escrito en oposición a sentencia sumaria, a efectos de que la causa de la caída era atribuible al limo.

Sépase que, al disponer de una moción de sentencia sumaria, "el tribunal necesariamente tendrá que escudriñar las alegaciones de la demanda o las defensas interpuestas para determinar si existen hechos en controversia que deban esclarecerse mediante juicio". *León Torres v. Rivera Lebrón*, 204 DPR 20, 42 (2020). A todas luces, efectuado tal ejercicio por el TPI, al sopesar la moción dispositiva presentada por Miraflores, se percató que en esta no se incluyó prueba documental suficiente en derecho que

---

[10] Entrada Núm. 1 de SUMAC, pág. 2.

sirviera para confirmar o descartar la alegación sobre la presunta presencia de limo en la rampa. Correspondía a la parte promovente de la sentencia sumaria, Miraflores, establecer los hechos que juzgara materiales como incontrovertidos, de manera que pusiera en posición al TPI de aplicar el derecho correspondiente, no lo consiguió respecto al tema del limo en la rampa. En consecuencia, el foro primario rectamente dispuso que tal asunto permanecía en controversia y tendrá que se dirimido en el juicio.

En definitiva, no apreciamos que el foro *a quo* hubiese abusado de su discreción al denegar la petición de sentencia sumaria. En específico, surge de los autos que el TPI aún no ha logrado establecer si la acera en la que ocurrió la caída del Recurrido tenía limo como alega el señor Colón Aymat, y si, en efecto, esto fue el factor decisivo que provocó el incidente. Por esto, hemos decidido abstenernos de intervenir con el dictamen interlocutorio recurrido, al no advertir en él pasión, prejuicio, parcialidad o error manifiesto.

**IV. Parte dispositiva**

Por lo explicado, ***denegamos*** expedir el recurso de *certiorari* solicitado.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones